IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANTOINETTE EVANS,

      Plaintiff,

v.

      Case No. 2:21-cv-05213
      JUDGE EDMUND A. SARGUS, JR.
      Magistrate Judge Chelsey M. Vascura

JENNIFER ICEMAN, *et al.*,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Partially Dismiss Plaintiff's Second Amended Complaint. (ECF No. 17, "Defs.' Mot.".) Plaintiff filed a response in opposition (ECF No. 23, "Pl.'s Resp.") and Defendants replied (ECF No. 24, "Defs.' Reply). For the following reasons, the Court **GRANTS** Defendants' Motion.

### I. Background

This case arises out of Plaintiff Evans's termination of employment from Liberty High School, located in the Olentangy Local School District ("OLSD") in Columbus, Ohio. (Second Am. Compl. ¶ 1.2, 3.1, ECF No. 16, hereinafter "Compl.".) Evans worked for the OLSD as a study hall monitor for 25 years. (*Id*. ¶ 3.1.) On April 7, 2021, Evans said to a student, "Can you believe that the coronavirus came from China and that China is making money from sales of PPE to the United States?" (*Id.* ¶ 4.7, 4.13.) That evening, Evans received a voicemail from Defendant Michael Starner, Principal of Liberty High School, instructing her to not return to work until the conclusion of an investigation into her comment to the student. (*Id.* ¶ 4.9.)

One week later, on April 14, 2021, the Liberty High School administration and OLSD employees held a meeting to discuss Evans's comment. (*Id.* ¶ 4.10.) Defendant Jennifer Iceman, an Assistant Director in OLSD Human Resources, ran the meeting. She told Evans that an Asian student heard the comment and was upset by it. (*Id.* ¶ 4.13.) Iceman allegedly remarked that the comment was a "microaggression," "offensive," and it constituted "racism and bigotry." She then allegedly stated that Evans was "not diversity trainable." (*Id.*)

The next day, OLSD informed Evans that she could resign her position or be terminated. (*Id.* ¶ 4.16.) Evans resigned. The OLSD Board and Superintendent accepted her resignation on April 22, 2021. (*Id.* ¶ 4.17.) Defendants proceeded to report Evans to the Ohio Department of Education's Office of Professional Conduct for "conduct unbecoming the teaching profession." (*Id.* ¶ 4.18.) Evans claims she cannot obtain employment within other Ohio public school districts because of the report. (*Id.*)

Evans filed this action on November 4, 2021, against OLSD Board of Education, Jennifer Iceman, Michael Starner and other OLSD administrators. (*See generally* ECF No. 1.) She asserts free speech, due process, and equal protection claims under the First and Fourteenth Amendments to the United States Constitution. She also asserts a free speech claim under the Ohio Constitution, Article 1, Section 11, and an intentional infliction of emotional distress claim under Ohio law.

Plaintiff later filed an amended complaint adding Defendants OLSD Superintendent Mark T. Raiff, and OLSD Board Members Julie Wagner Feasel, Dave King, Kevin O'Brien, Mindy Patrick, and Lakesha Wise (ECF No. 3). Defendants thereafter filed a Motion to Dismiss (ECF No. 11). Plaintiff filed a motion to amend her complaint, which the Court granted (ECF No. 15). After Plaintiff filed her Second Amended Complaint (ECF No. 16), Defendants filed a Partial Motion to Dismiss the Second Amended Complaint (ECF No. 17). The motion is ripe for review.

2

## II. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining this, a court must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin., Corp.*, 281 F.3d 613, 619 (6th Cir. 2007). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

## III. Analysis

Defendants ask the Court to dismiss Count III (Equal Protection under the Fourteenth Amendment), Count VI (intentional infliction of emotional distress), Count VII (Liability of Superintendent and Board of Education for Policies, Customs, Practices and Inadequate Training/Supervision), and Count VIII (Lost Wages). Defendants do not challenge Count I (First Amendment Free Speech), Count II (First Amendment Retaliation), Count IV (Due Process Violation), or Count V (Free Speech Under the Ohio Constitution).

Defendants also move to dismiss all claims against Superintendent Mark Raiff as well as Board of Education members Julie Wagner Feasel, Dave King, Kevin O'Brien, Mindy Patrick, and Lakesha Wise (collectively, "Board Members").

3

### A. Count III: Equal Protection Under the Fourteenth Amendment

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike" under the law. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To bring an Equal Protection claim, a plaintiff may allege disparate treatment either based on her membership to a protected class or as a "class of one." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Under the class-of-one theory, a plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* (citing *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441 (1923)). However, the Supreme Court has held that the "the class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 598 (2008). The Court explained that the government, as an employer, is allowed to take individualized actions but the government, as a sovereign, is not:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.

*Id.* at 603. *Enquist* controls, barring Plaintiff's claim as a Government employee. OLSD, an arm of government acting in the employer context, maintains discretion to individually assess its employees and make correspondingly individualized employment decisions. Count III is dismissed.

### B. Count VI: Intentional Infliction of Emotional Distress

Evans must allege four elements to sustain her intentional infliction of emotional distress claim under Ohio law: "(1) defendants intended to cause emotional distress, or knew, or should have known that their actions would result in plaintiff's serious emotional distress, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff suffered serious emotional anguish." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (*citing Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 603 N.E.2d 1126, 1132 (Ohio Ct.App. 1991)). To satisfy the second element, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 375 (6th Cir. 1999). Here, Defendants' alleged conduct does not reach that threshold.

According to the Complaint, Plaintiff received a voicemail from Defendant Starner "instructing her not to return to school the next day or until after an investigation was conducted." (Compl. ¶ 4.9.) At the meeting a week later, Defendants "did not provide Evans with a copy of any complaint about her conduct and did not disclose the identity of the alleged victim(s)." (*Id.* ¶ 4.12.) Defendant Iceman was "aggressive and without mercy in her condemnation" of Plaintiff's comment and "was so threatening and dominant throughout the meeting that Evans was made to believe that her entire life and livelihood were on the line." (*Id.* ¶ 4.14.) Defendant Iceman allegedly "characterized Evans' comment as constituting racism and bigotry" and stated that Plaintiff was "not 'diversity-trainable,' which was likely an unwitting comment." (*Id.* ¶ 4.13.) Taking the allegations as true, this conduct does not rise to the level of outrageous, extreme, atrocious, or "utterly intolerable in a civilized society."

5

"[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement." *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993). Cruel, rude, or harassing comments from an employer to an employee are not considered outrageous and extreme. *See, e.g.*, *Wolfe v. Thermo Fisher Scientific, Inc.*, No. 08–cv–933, 2009 WL 1255023, at *l–3 (S.D. Ohio May 4, 2009) (employer's false imprisonment of an employee for hours without food or water while interrogating, intimidating, harassing, and embarrassing her was not extreme or outrageous); *Rubin v. Ford Motor Co.*, No. 04–836, 2006 WL 2128934, at *5–6 (S.D. Ohio July 27, 2006) (employer's "intentional, offensive and unjustified pattern of conduct (both verbal and physical)," including poking and swearing at plaintiff, was insufficiently extreme or outrageous); *Hill v. Village of West Lafayette*, No. 95 CA 27, 1996 WL 487943, at *4–6 (Ohio Ct.App. May 24, 1996) (employer's false disciplinary charges and defamatory conduct against plaintiff were not extreme or outrageous); *Rossi v. Alcoa, Inc.*, 129 F. App'x 154 (6th Cir. 2005) (finding no outrageous and extreme conduct where an employer treated an employee "harshly, rudely, and unfairly" and was "harassing" and "singling him out"). Defendants' alleged conduct falls in the same category as the cases above. Taking Evans's allegations as true, Defendants' actions are not "extreme" and "outrageous" under the law. Count VI is dismissed.

### C. Count VII: *Monell* Claim for Unconstitutional Policies

A municipality—or an arm of a municipality, such as a school board—may be liable under Section 1983 for customs or policies that violate a private individual's constitutional rights. *See Monell v. Dept. of Social Serv.*, 436 U.S. 658, 690–91, 94 (1978). To prevail on a *Monell* claim, a plaintiff must establish the existence of a municipality custom or policy, a constitutional violation, and a causal link between the two. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Customs or policies can take the form of (1) an official policy or legislative enactment, (2) decisions or

ratifications of final decision makers, (3) inadequate training or supervision, or (4) a custom of acquiescence to or tolerance of rights deprivations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). In her response brief, Plaintiff contends that she may proceed under the second, third, and fourth forms of customs and policies. The pertinent part of the Complaint states:

> The acts and omissions of Defendant Raiff and the Defendant Board Members, as described in Paragraphs 4.30, 4.31 and 4.32 above, were the moving force behind the violations of Evans rights and the damages she sustained. Indeed, not only were the other Defendants inadequately trained and supervised for the protection of the free speech of OLSD employees, they were encouraged by the policies, practices, customs and decisions of Defendant Raiff and Defendant Board Members to chill and punish disfavored speech, all of which gives rise to a claim for money damages and injunctive relief under 42 U.S.C. §1983.

(Compl. ¶ 11.2.)

**1. Decisions or Ratifications of Final Decision Makers**

Under a ratification or decision-making theory, a single decision constitutes a municipal policy "if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered,' which means that his decisions are 'final and unreviewable and are not constrained by the official policies of superior officials.'" *Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013) (internal citations omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). For ratification, a plaintiff must show (1) a final decision maker ratified a subordinate's decision by providing "affirmative approval" of it; and (2) "the ratification was a 'moving force' in causing the constitutional violation." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656, n.3 (6th Cir. 1993) (quoting *Williams v. Ellington*, 936 F.2d 881, 885 (6th Cir. 1991)). Evans must allege that a final decisionmaker made a decision or ratified a decision, and that decision or ratification violated her constitutional rights.

Plaintiff's response brief states, without support, that she falls into the ratification or decision-making theory. Neither the Complaint nor her response brief identifies the alleged final decisionmaker or whether they possessed final, unreviewable authority. The Complaint states, "Mark T. Raiff is the Superintendent…and a policy making official for the administration of schools…" (Compl. ¶ 3.5.) But Plaintiff does not allege that Raiff decided to terminate her or ratified her termination. She also fails to allege how the decision or ratification was a moving force in causing the constitutional violation. Plaintiff's conclusory assertion cannot support her decision-making or ratification theory of liability.

2. **Inadequate Training or Supervision**

Plaintiff also argues her constitutional violation spawned from an OLSD policy of inadequate training and supervision. A municipality's decision to forego training or supervision of employees regarding "their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To support this theory, a plaintiff must show "(1) the training or supervision was inadequate for the tasks performed, (2) the inadequacy was the result of the municipality's deliberate indifference, and (3) the inadequacy was closely related to or actually caused the [constitutional] injury." *Regets v. City of Plymouth*, 568 F. App'x 380, 394 (6th Cir. 2014).

Plaintiff makes one conclusory allegation: "Defendants [were] inadequately trained and supervised for the protection of the free speech of OLSD employees." (Compl. ¶ 11.2.) This, alone, is insufficient. Plaintiff does not allege that OLSD knew its employees were inadequately trained and supervised regarding free speech—and therefore was deliberately indifferent to a problem. She also does not allege how OLSD's lack of training and supervision caused her allegedly unconstitutional termination. *Regets*, 568 F. App'x at 394. For these reasons, the Complaint does

8

not allege an inadequate training or supervision theory of liability.

### 3. Acquiescence to or Tolerance of Rights Deprivations

Plaintiff contends that "Defendants' inaction" and failure to investigate her termination suggests a policy of acquiescence to or tolerance of rights deprivations. (Pl.'s Resp. at 19.) To show a failure-to-investigate claim, Plaintiff must allege that Defendants failed to investigate other constitutional violations and that the policy of failing to investigate caused her injury. *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 495 (6th Cir. 2020).

Plaintiff cannot proceed under this theory for at least two reasons. First, the Complaint does not allege that Defendants failed to investigate her termination. That is only stated in her response brief. Second, the Complaint does not allege that OLSD failed to investigate prior constitutional violations. Plaintiff argues that one instance of a failure to investigate is sufficient to show a custom of acquiescence or tolerance. She cites *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985) and *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241 (6th Cir. 1989). However, as Defendants pointed out, the Sixth Circuit has set aside the conclusions in *Marchese* and *Leach*. Plaintiffs must allege more than a "single failure to investigate a single plaintiff's claim" to show a policy of acquiescence. *Pineda*, 977 F.3d at 495 (6th Cir. 2020) ("Since *Leach* and *Marchese*, however, we have clarified the scope of this 'ratification' theory in a way that dooms [plaintiff]'s claim in this case."). Here, Evans does not allege that Defendants have failed to investigate similar constitutional violations in the past. *See Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019) (plaintiffs must allege "multiple earlier inadequate investigations and they must concern comparable claims.").

In sum, when viewing the Complaint in a light most favorable to Plaintiff there are insufficient allegations that OLSD had a custom or policy of violating people's constitutional right to free speech. The *Monell* claim is dismissed.

### D. Count VIII: Lost Wages

Defendants move to dismiss Count VIII of the Complaint, Loss of Wages/Employment Benefits and Employment Opportunities, on the grounds that it is simply an element of damages and not an independent claim. (Defs.' Mot. at 15–16.) Plaintiff, in her response, concedes that the claim "may lack perfection as a pleading practice" but it "served the purpose of succinctly alleging new facts and a new, specific monetary claim in a single new claim for relief." (Pl.'s Resp. at 20.) That section of the Complaint states:

> The acts and omissions of Defendants in compelling the unlawful termination of Evans' employment with OLSD, in combination with their malicious and unnecessary reporting of Evans to the Ohio Department of Education's Office of Professional Conduct alleging "conduct unbecoming the teaching profession" as described in Paragraph 4.18 above, were the moving force behind Evans' loss of income, loss of other employment benefits, and loss of employment opportunities even after she was initially able to mitigate her damages by finding employment in the private sector. Evans' loss of wages, benefits and opportunities became significant in late summer 2021, continue to accrue, and are currently valued by Evans in excess of $12,000.

(Compl. ¶ 12.2.)

The Court agrees with Defendants that loss of wages is not an independent cognizable claim and the allegations above fit under other claims in the Complaint. Count VIII is dismissed.

### E. Claims Against Superintendent Mark Raiff and Board Members

Defendants move to dismiss all claims against the Superintendent and Board Members in their official and individual capacities. (Defs.' Mot. at 10.) In her response brief, Plaintiff voluntarily dismisses her claims against Superintendent Mark Raiff and other Board Members in their official capacities but defends her claims against them in their individual capacities. (Pl.'s Resp. at 14.)

Defendants argue that the claims against Superintendent Raiff and the Board Members in their individual capacities must be dismissed because Plaintiff does not make specific factual allegations of each individual's conduct. (Defs.' Mot. at 11.) The Court agrees.

Section 1983 liability does not apply to supervisors who simply oversee employees acting unconstitutionally but have no personal involvement in the alleged unconstitutional behavior. *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.") In other words, "[s]upervisory officials are not liable in their individual capacities unless they 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982)).

Plaintiff points to the following two Complaint paragraphs as evidence of Superintended Raiff's and the Board Members' personal involvement:

> Both prior to and after Evans' forced resignation, Liberty High School has been a continuous platform for the promotion of leftist/Marxist/Communist ideologies, including the promotion of Black Lives Matter, Critical Race Theory, White Privilege, Gay Pride, and Transgenderism. These controversial and subversive ideologies, known by all Defendants to be offensive to many OLSD faculty and staff, other employees, and parents/students of a more traditional/conservative mindset, were promulgated, approved, and/or ratified by Defendants Raiff, by Defendant Board Members, and by Defendants Iceman, Starner and Kim.

(Compl. ¶ 4.23.)

> Meanwhile, the values and ideologies of people like Evans, meaning Judeo-Christian values and an appreciation of Western Civilization, are suppressed, mocked, or even punished. The punishment and forced termination of Evans by OLSD in April 2021 for her observations about the role of Communist China in the COVID-19 pandemic was in stark contrast to the treatment of similarly-situated OLSD faculty/staff/employees who were free to spread their controversial views and ideologies throughout the schools, whether in verbal conversations, teaching in classrooms, visual displays, bulletin boards, or other forms of communication. This

> glaring double-standard and viewpoint-based discrimination was known to all of the Defendants and promulgated, approved, and/or ratified by all of the Defendants.

(*Id.* ¶ 4.24.)

These allegations generally state that all Defendants promoted leftist policies and suppressed Judeo-Christian values. The Complaint does not specify what Superintendent Raiff or the Board Members' personal, individual involvement was in promoting the policies or suppressing values. Therefore, all claims are dismissed against Defendants Mark Raiff, Julie Wagner Feasel, Dave King, Kevin O'Brien, Mindy Patrick, and Lakesha Wise in their individual and official capacities.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 17). The following defendants are dismissed from the case: Mark Raiff, Julie Wagner Feasel, Dave King, Kevin O'Brien, Mindy Patrick, and Lakesha Wise. This case remains open.

**IT IS SO ORDERED.**

**7/26/2022**                      **s/Edmund A. Sargus, Jr.**
**DATE**                              **EDMUND A. SARGUS, JR.**
                                             **UNITED STATES DISTRICT JUDGE**